The STATE of Ohio, Appellee,

v.

JOHNSON, Appellant.

[Cite as *State v. Johnson* (2000), 140 Ohio App.3d 385.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990905.

Decided Nov. 24, 2000.

386

388

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Scott A. Rubenstein,* Assistant Prosecuting Attorney, for appellee.

*Linda S. Bolin,* for appellant.

HILDEBRANDT, Presiding Judge.

Defendant-appellant, Robert Johnson, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of trafficking in marijuana and possessing marijuana in an amount exceeding 20,000 grams. He was found guilty of the offenses after a jury trial. For the following reasons, we affirm the convictions.

At trial, the state first presented the testimony of Florence Denning. Denning stated that Johnson had approached her at her Louisville residence and asked her if she wanted to help him transport some "weed" to Cincinnati. Denning assented and agreed to drive Johnson—and the contraband—to Cincinnati the next day.

According to Denning, she met Johnson at the Greyhound bus station in Louisville and drove to the Cincinnati home of Aswad Bandele. She and Johnson then followed Bandele to a warehouse where the transaction was to occur. Denning testified that she pulled her car into the warehouse and that Johnson had helped to retrieve the duffel bags containing the marijuana from the trunk of her car. The buyer of the marijuana, undercover detective Terrell Williams, inspected the marijuana, weighed it, and then called for other officers stationed in the warehouse to effectuate the arrest. A surveillance videotape of the transaction revealed that Johnson had helped to unload the marijuana from the car and

to weigh it. The report from the crime laboratory at the coroner's office indicated that the total weight of the marijuana was approximately 22,000 grams.[1]

Johnson testified that he was not involved with the transport or sale of the marijuana. According to his testimony, his automobile had broken down in Louisville while he was on his way to Dayton, Ohio, on a business trip. He stated that, through a series of mishaps, he had sought a ride to Dayton via Cincinnati and had happened to be in the car containing the marijuana when the transaction was completed. Johnson asserted that when he became aware that a drug transaction was occurring, he attempted to leave the warehouse. He also presented the testimony of witnesses who confirmed that he had been on his way to Dayton and that his car had broken down in Louisville.

The jury returned verdicts of guilty on both counts, and the trial court sentenced Johnson to concurrent eight-year terms of incarceration for the offenses.

In his first assignment of error, Johnson argues that the trial court erred in entering convictions for both offenses. He contends that the possession and trafficking charges involved allied offenses of similar import within the meaning of R.C. 2941.25. We disagree. The Supreme Court of Ohio has held that, in determining whether offenses are allied pursuant to R.C. 2941.25, a court must compare the elements of the offenses, in the abstract, and determine whether the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." [2]

In the instant case, the crimes were not allied offenses of similar import. R.C. 2925.11, governing possession of drugs, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." By contrast, the drug-trafficking statute, R.C. 2925.03, provides that "[n]o person shall knowingly sell or offer to sell a controlled substance." Thus, the statute proscribing possession does not include the element of a sale or an offer to sell, while the drug-trafficking statute does not require actual possession or use of the controlled substance. With the elements compared in the abstract, then, the crimes are not allied, and the trial court did not err in entering convictions for both offenses. The first assignment of error is overruled.

In his second assignment of error, Johnson contends that the cumulative effect of errors occurring at trial deprived him of a fair trial. Under this assignment, Johnson lists more than forty rulings of the trial court that he claims were

---

1. Testimony at trial indicated that 22,000 grams is between forty and fifty pounds.

2. *State v. Rance* (1999), 85 Ohio St.3d 632, 638, 710 N.E.2d 699, 705, citing *State v. Jones* (1997), 78 Ohio St.3d 12, 14, 676 N.E.2d 80, 81.

erroneous. Many of the rulings involved the trial court's limitation of Johnson's direct examination of witnesses on the basis that the questions called for hearsay. In a number of other rulings, the trial court limited direct and cross-examination as to the videotape of the transaction and the arrest. Elsewhere, the court *sua sponte* rejected questions of defense counsel on the basis that counsel was attempting to testify.

The Supreme Court of Ohio has recognized that the cumulative effect of errors may deprive a defendant of a fair trial, even though the individual instances of error do not warrant reversal.[3] But the defendant must demonstrate that there is a reasonable probability that the outcome of his trial would have been different absent the alleged errors.[4] In the case at bar, our review of the record convinces us that, even if the asserted rulings were erroneous, there is no reasonable probability that the outcome of the trial would have been different in the absence of the errors. Given the strength of the state's case, including videotaped evidence of Johnson's participation in the offenses, any errors in the trial court's rulings were harmless beyond a reasonable doubt.

We do note that, under this assignment of error, Johnson also claims that the trial court erroneously admitted the statements of a nontestifying codefendant, Bandele. Even were we to accept Johnson's argument that the court's ruling was erroneous, we would find no prejudice to have resulted. The statements attributed to Bandele indicated only that a drug transaction was to occur, a fact that was clearly proven by other evidence in the record. The statements did not indicate that Johnson was to be a participant in the transaction or otherwise directly implicate Johnson in the offenses. Thus, any error in admitting the statements was harmless.

In sum, Johnson has not demonstrated that the cumulative effect of the asserted errors deprived him of a fair trial. The second assignment of error is therefore overruled.

In the third assignment of error, Johnson argues that he was deprived of a fair trial due to the bias of the trial judge against him and in favor of the prosecution. Generally, the proper avenue for redress when a party believes that the trial judge is biased is the filing of an affidavit of bias and prejudice with the Supreme Court of Ohio.[5] Nonetheless, in the case at bar, we have reviewed the

---

**3.** See *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256, paragraph two of the syllabus.

**4.** See *State v. Moreland* (1990), 50 Ohio St.3d 58, 69, 552 N.E.2d 894, 905; *State v. Cole* (Jan. 22, 1997), Hamilton App. No. C–950900, unreported, 1997 WL 22659.

**5.** R.C. 2701.03.

record and find no merit in the argument that the trial judge was biased. Although Johnson cites several rulings of the trial judge that were adverse to him, these rulings do not establish that the trial judge violated his duty of impartiality or deprived Johnson of a fair trial. The third assignment of error is overruled.

Johnson argues, in his fourth and fifth assignments of error, that the trial court erred in denying his motions to continue the trial to secure the presence of witnesses. In deciding a motion for a continuance, the trial court is to consider the length of the delay requested; whether other continuances have been requested and granted; the inconvenience to the litigants, witnesses, counsel, and the court; whether the requested continuance is for legitimate purposes; whether the requesting party has contributed to the circumstance giving rise to the continuance; and all other relevant factors.[6] The decision to grant or deny a motion for a continuance is entrusted to the discretion of the trial court and will not be reversed absent an abuse of discretion.[7] The term "abuse of discretion" means more than a mere error of law or judgment; it implies that the court's decision was unreasonable, arbitrary, or unconscionable.[8]

Johnson first argues that the trial court erred in denying his request for a three-day continuance made on the first day of trial. Johnson argued that he needed the continuance to secure the presence of three witnesses, only one of whom ultimately appeared for the trial. Johnson requested that the trial be delayed until the following Monday. We find no abuse of discretion in the court's decision, given that the defendant's case-in chief was still in progress on the Monday in question, thus permitting Johnson the requested period of time to secure the witnesses.

Johnson's second argument is that the court erred in refusing to continue the case for forty-five minutes to allow for the arrival of defense witness Milton Fambros. That request for a continuance was made on the final day of Johnson's case-in-chief, after he had called all of his witnesses who were present. Again, we are not persuaded that the trial court abused its discretion. Although we are mindful that the requested delay was for a brief period, the request came after the trial had been in progress for more than three days. The trial court could have reasonably concluded that Johnson had been allotted ample time to contact

---

6. *State v. Unger* (1981), 67 Ohio St.2d 65, 67–68, 21 O.O.3d 41, 43–44, 423 N.E.2d 1078, 1080.

7. *Id.*, syllabus; *State v. Haynes* (Jan. 15, 1999), Hamilton App. Nos. C–970809 and C–970821, unreported, 1999 WL 12719, jurisdictional motion overruled (1999), 85 Ohio St.3d 1477, 709 N.E.2d 849, and (2000), 87 Ohio St.3d 1492, 722 N.E.2d 525.

8. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

Fambros and to secure his presence. Moreover, Johnson did not make a proffer as to what Fambros's testimony would have been, thus rendering it impossible for us to conclude that Johnson was prejudiced by the denial of the continuance. Accordingly, the fourth and fifth assignments are overruled.

 In the sixth assignment of error, Johnson claims that the trial court erred in prohibiting him from fully cross-examining Denning concerning her plea bargain with the prosecution. We first note that the trial court is vested with broad discretion in limiting the scope of cross-examination, and its decisions in this respect will be reversed only upon a showing of an abuse of that discretion.[9] Here, the testimony adduced on direct and cross-examination revealed that Denning had not been promised anything in exchange for her entry of a guilty plea, and the record does not indicate that further cross-examination would have revealed anything to the contrary. Thus, we cannot say that the trial court abused its discretion in limiting the scope of cross-examination on the issue. The sixth assignment of error is overruled.

Johnson contends, in his seventh assignment of error, that the trial court erred in admitting the videotape of the drug transaction and the arrest into evidence. He first argues that defects in the tape rendered it unfairly prejudicial. We disagree.

 The decision to admit or exclude relevant evidence is left to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion.[10] In the case at bar, we find no abuse of discretion in the admission of the videotape. Although Johnson argues that the tape did not depict the entire area in which the transaction occurred, it did depict the relevant participants and their actions in completing the transaction. Moreover, Johnson's argument that the tape failed to capture the voices of all of the participants goes to the weight, rather than the admissibility, of the evidence. The trial court could have reasonably concluded that the probative value of the tape outweighed the danger of unfair prejudice within the meaning of Evid.R. 403.

 Johnson next argues that the state failed to properly authenticate the videotape. Once again, we find no merit in this argument. Detective Williams testified that he had seen the videotape and that it fairly and accurately depicted the events that had occurred in the warehouse on the date in question. Thus, the tape was properly authenticated pursuant to Evid.R. 901(A). Johnson's assertion

---

**9.** *State v. Vanover* (Sept. 29, 2000), Hamilton App. No. C–990104, unreported, 2000 WL 1434161.

**10.** *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

that the operator of the surveillance equipment did not authenticate the videotape is irrelevant. The trial court was presented with ample testimony that the tape was what the state claimed it to be, and we find no error in its admission. Therefore, the seventh assignment of error is overruled.

In his eighth assignment of error, Johnson argues that the trial court erred in failing to instruct the jury that a person may not be convicted for mere presence at the time and place of a crime. This assignment of error is not well taken. The court's general instructions to the jury clearly indicated that, for Johnson to be convicted, the jury would have to find that he had knowingly participated in the offenses. The trial court is not required to give a proposed instruction that is subsumed within the court's general charge.[11] Therefore, even were we to assume that the evidence presented at trial was consistent with the requested charge, we would find no error in the court's refusal to instruct the jury on "mere presence." The eighth assignment of error is accordingly overruled.

Johnson argues in his ninth assignment of error that he was denied the effective assistance of trial counsel. To establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and, in addition, that prejudice arose from counsel's performance.[12] To show prejudice, the defendant must demonstrate that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.[13]

Johnson first argues that his trial counsel was deficient in failing to subpoena certain witnesses to testify on his behalf. However, as the record does not reflect what the substance of the witnesses' testimony would have been, Johnson has failed to demonstrate that any prejudice arose from their absence. The argument is therefore not well taken.

Johnson next argues that counsel was ineffective in failing to file a written request for jury instructions. Although Johnson does not specify how this failure constituted ineffective assistance, his argument apparently relates to the court's failure to instruct the jury concerning "mere presence." Having held, under the eighth assignment of error, that the instruction was not required, we find no deficiency in trial counsel's failure to submit a written request and no prejudice to

---

11. *State v. Sneed* (1992), 63 Ohio St.3d 3, 9, 584 N.E.2d 1160, 1167; *State v. Biggers* (Apr. 29, 1992), Hamilton App. No. C–910398, unreported, 1992 WL 86507.

12. *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–693; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.

13. *Id.*

have resulted from the omission. The ninth assignment of error is therefore overruled.

■ In his tenth and final assignment of error, Johnson argues that his convictions were based upon insufficient evidence and were contrary to the manifest weight of the evidence. In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [14] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. [15]

■ In the case at bar, we cannot say that the convictions were based upon insufficient evidence or were against the manifest weight of the evidence. The testimony of Denning indicated that Johnson had possession of the marijuana and that he knowingly participated in the sale of the marijuana to the undercover officer. According to Denning, Johnson transported the marijuana to Cincinnati for the express purpose of selling it and did in fact facilitate the sale. [16] Her testimony was corroborated by Williams, who stated that Johnson had helped to retrieve the marijuana from the car while it was parked in the warehouse. The videotape of the transaction further bolstered the state's case, as it revealed Johnson taking an active role in the sale of the contraband. Although Johnson contended that he was merely a victim of circumstance and that he had no knowledge that the transaction was to occur, it was within the discretion of the jury to believe the prosecution's witnesses and to reject the evidence advanced by the defense. [17] The tenth assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PAINTER and SUNDERMANN, JJ., concur.

---

14. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825.

15. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

16. Moreover, the record contains ample evidence that the amount of marijuana involved in the offenses rendered them felonies of the second degree. See R.C. 2925.11(C)(3)(f) and 2925.03(C)(3)(f).

17. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.