OPINION.
Defendant-appellant Derrice McCoy has taken the instant appeals from his convictions, following a jury trial, on two counts of possession of marijuana and single counts of trafficking in marijuana, possession of crack cocaine, and having a weapon while under a disability.[1] On appeal, he advances six assignments of error. Finding merit to portions of the challenges concerning the trial court's compliance with the controlling sentencing provisions, we reverse in part the judgments of conviction entered below.
The charges against the appellant arose in connection with the events of December 27, 1998. On that date, officers assigned to the Cincinnati Police Division's Street Corner Unit placed under surveillance an apartment that had been reported by a confidential informant as a base for drug trafficking. That morning, Officer Paul Fangman was stationed on the street in front of the apartment building and observed the appellant through binoculars as he arrived in a car that was registered in his name and entered the building. A short time later, the appellant emerged from the building and was joined at the rear of the car by a man who had arrived in a sport utility vehicle. The appellant removed a black plastic garbage bag from the car's trunk and handed it to his companion, who placed the bag into the sport utility vehicle and drove away.
Officer Fangman transmitted his observations to other undercover officers in the area, who, upon his instructions, followed the sport utility vehicle. When the vehicle stopped, the officers approached the driver and advised him of Officer Fangman's observations. The driver admitted to possessing marijuana and permitted the officers to recover from his vehicle the black plastic garbage bag. The bag was subsequently determined to contain ten pounds of marijuana.
The officers then executed a search warrant at the apartment under surveillance. The search disclosed a loaded .38-caliber handgun, more than 900 grams of crack cocaine, $12,000 in cash, approximately six pounds of marijuana, two electronic scales, and an annotated envelope identified at trial by the search's inventory officer as a "pay-and-owe sheet" that, in the officer's experience, commonly served to memorialize the indebtedness between a drug dealer and his customers.
The efforts of law enforcement officers to locate the appellant following the warrant's execution proved fruitless until his apprehension in October 1999. On October 22, 1999, the Hamilton County Grand Jury returned a three- count indictment, charging the appellant with possession of crack cocaine, possession of marijuana, and having a weapon while under a disability. The cocaine-possession count carried a major-drug-offender specification. On May 4, 2000, the grand jury handed down a second indictment, which charged the appellant with trafficking in marijuana and possession of marijuana. The trafficking count further specified that the offense had been committed in the vicinity of a school or a juvenile.
The two cases were consolidated for purposes of trial. Trial of the charges to a jury resulted in verdicts of guilty as charged. The trial court thereupon imposed the maximum possible sentence on each count and an additional ten- year term of confinement upon the appellant's classification as a major drug offender and ordered that the sentences be served consecutively.
 I.
In his first assignment of error, the appellant contends that the trial court erred in permitting the prosecution to exercise a peremptory challenge in a racially discriminatory manner. We find no merit to this contention.
The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination by the prosecution in exercising a peremptory challenge to excuse a juror on account of his race. See Batson v.Kentucky (1986), 476 U.S. 79, 89, 106 S.Ct. 1712, 1719; State v.Hernandez (1992), 63 Ohio St.3d 577, 581, 589 N.E.2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S.Ct. 279. To establish a prima facie case of purposeful discrimination, an accused must show (1) that the prosecution has peremptorily challenged a member of a recognized racial group, and (2) that these facts and any other relevant circumstances raise the inference that the prosecution has exercised its peremptory challenge to exclude the juror on account of his race. Once the accused has established a prima facie case, the burden of production shifts to the prosecution to tender a race-neutral explanation. See Statev. Hill (1995), 73 Ohio St.3d 433, 444-445, 653 N.E.2d 271, 282, certiorari denied (1996), 516 U.S. 1079, 116 S.Ct. 788 (citingHernandez, supra at 582, 589 N.E.2d at 1313). The trial court must then determine whether the accused has proved purposeful racial discrimination. A finding by the trial court that the accused has failed to prove purposeful discrimination will not be reversed on appeal in the absence of a determination that it was "`clearly erroneous'." Hernandez,supra at 582-583, 589 N.E.2d at 1313-1314 (quoting Hernandez v. New York
[1991], 500 U.S. 352, 369, 111 S.Ct. 1859, 1871).
In the course of the voir dire examination conducted in the proceedings below, the prosecution exercised a peremptory challenge to strike a prospective alternate juror. The trial court noted that the juror was African American and called upon the prosecution to offer a race-neutral explanation for the strike. The assistant prosecutor stated that he "had a problem with [the prospective juror's] answers to the questions about his neighborhood and whether * * * he had any friends, relatives or acquaintances that had any kind of conviction or arrest * * * for drugs," and that he had found the juror to be less than "forthcoming" about the "high-drug area" in which he had grown up.
On the basis of the record before us, we cannot say that the trial court's determination that the appellant had failed to prove purposeful racial discrimination was clearly erroneous. We, therefore, hold that the court did not err in permitting the prosecution to exclude the prospective juror and, accordingly, overrule the first assignment of error.
 II.
In his second assignment of error, the appellant contends that he was denied the effective assistance of counsel at trial. This contention is equally untenable.
The Ohio Supreme Court in State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, established a two-step inquiry to determine whether a criminal defendant has been denied the effective assistance of counsel:
 First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.
 Id. at 396-397, 358 N.E.2d at 627; see, also, Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Trial counsel's performance will not be deemed ineffective unless the appellant shows that "counsel's representation fell below an objective standard of reasonableness," Strickland, supra at 688, 104 S.Ct. at 2064, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra at 143, 538 N.E.2d at 380.
The appellant asserts that he was denied the effective assistance of counsel, when his counsel (1) failed to object to the presence at the prosecution's table throughout the trial of a police officer who testified as a state's witness; (2) failed to move for a separation of witnesses; (3) failed to renew his Crim.R. 29 motion for acquittal at the close of the state's case; and (4) failed to offer timely objections to improper remarks by the assistant prosecutor during his closing argument.
Prior to trial, the assistant prosecutor disclosed that Cincinnati Police Officer Michael Hudepohl would "sit as case agent throughout * * * the trial." Defense counsel expressly declined this opportunity to object to the contemplated presence of Officer Hudepohl in the courtroom during the testimony of other witnesses and failed ultimately to move for a separation of witnesses. During the state's case, Officer Hudepohl testified at length to the events of December 27, 1998.
Evid.R. 615 requires a court, upon the request of a party, to "order witnesses excluded so that they cannot hear the testimony of other witnesses." Evid.R. 615(B) exempts from such an order "an officer or employee of a party [that] is not a natural person[,] designated as [the party's] representative by its attorney * * *." Officer Hudepohl was so designated; therefore, we cannot say that counsel violated an essential duty to the appellant by declining to object to the officer's presence in the courtroom. As for counsel's failure to request a separation of witnesses, the appellant cannot be said to have been thereby prejudiced, when the record does not demonstrate the presence in the courtroom during trial of any witness other than Officer Hudepohl.
Nor can counsel's representation be said to have been prejudicially deficient based on his failure to offer timely motions for acquittal. Upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether each material element of the offenses charged had been proven beyond a reasonable doubt. See State v.Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184. Counsel's failure to test the legal adequacy of the evidence by means of a Crim.R. 29 motion, therefore, did not prejudice the appellant, when the record does not present a reasonable probability that such a motion would have, with respect to any charge, yielded an acquittal. See Bradley, supra.
Finally, the appellant asserts that counsel violated essential duties by failing to object to allegedly improper aspects of the state's closing argument. Again, our examination of the record of the proceedings below does not disclose a reasonable probability that, but for these alleged omissions, either individually or in the aggregate, the result of the trial would have been different. We are, therefore, unable to conclude that the appellant was prejudiced by defense counsel's performance in these respects. See Bradley, supra. Accordingly, we overrule the second assignment of error.
 III.
The appellant contends in his third assignment of error that the trial court erred by sentencing him for both trafficking in marijuana in violation of R.C. 2925.03(A) and possession of marijuana in violation of R.C. 2925.11(A), as charged in the indictment numbered B-0003366. This contention is feckless.
The guarantees against double jeopardy contained in Section 10, ArticleI of the Ohio Constitution and the Fifth Amendment to the United States Constitution, made applicable to the states through theFourteenth Amendment, protect against multiple punishments for the same offense. SeeNorth Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072. To effectuate this aspect of the double-jeopardy prohibition, the Ohio General Assembly enacted R.C. 2941.25, which provides as follows:
 Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 Thus, pursuant to R.C. 2941.25, a criminal defendant may, in a single proceeding, be found guilty of and sentenced for two offenses, having as their genesis the same criminal conduct or transaction, if the offenses (1) are not allied and of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. See State v. Bickerstaff (1984), 10 Ohio St.3d 62, 461 N.E.2d 892.
Two distinct statutory offenses constitute allied offenses of similar import if the elements of the respective offenses, compared in the abstract, correspond to such a degree that the commission of one offense will result in the commission of the other offense. See State v. Rance
(1999), 85 Ohio St.3d 632, 638, 710 N.E.2d 699, 705. If the offenses are not allied and of similar import, the analysis ends there, and the defendant may be charged with, found guilty of, and sentenced for both offenses. If, however, the offenses are allied offenses of similar import, the court must undertake the second step in the analysis, set forth under R.C. 2941.25(B), and determine whether the offenses were committed separately or with a separate animus as to each. See Rance,supra at 638-639, 710 N.E.2d at 705.
The appellant was convicted of possession of and trafficking in the marijuana contained in the black plastic garbage bag that the appellant had removed from his trunk and handed to the man in the sport utility vehicle. A conviction for possession of drugs in violation of R.C.2925.11(A) must be predicated upon proof that the accused knowingly obtained, possessed, or used a controlled substance. A conviction for trafficking in drugs as proscribed under R.C. 2925.03(A) may be secured upon proof that the accused knowingly sold or offered to sell a controlled substance, or that he prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed a controlled substance, with knowledge or reasonable cause to believe that the substance was intended for sale or resale.
Thus, the two offenses, as statutorily defined, have in common the culpable mental state ("knowingly") and the objective of the proscribed conduct ("a controlled substance"). But the statutes proscribe mutually exclusive forms of conduct. The offenses are, therefore, not allied offenses of similar import, when the statutory elements of the two offenses, viewed in the abstract, do not correspond to such a degree that the commission of one offense will result in the commission of the other offense. Accordingly, the appellant could, consistent with R.C. 2941.25(A), be charged with, found guilty of, and sentenced for both offenses. AccordState v. Johnson (2000), 140 Ohio App.3d 385, 390, 747 N.E.2d 863, 867
(holding that possession and trafficking are not allied offenses of similar import, because "the statute proscribing possession does not include the element of a sale or an offer to sell, while the drug-trafficking statute does not require actual possession or use of the controlled substance"). We, therefore, overrule the third assignment of error.
 IV.
The appellant contends in his fourth assignment of error that the imposition of an additional ten-year term of confinement upon the determination that he was a major drug offender violated his constitutional rights to due process and trial by jury. We find no merit to this contention.
The appellant cites in support of this contention the decision of the United States Supreme Court in Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348. Apprendi was arrested and indicted for a variety of offenses after he had fired several bullets into the home of an African-American family that had recently moved into a previously all- white neighborhood. He subsequently entered guilty pleas to two counts of possession of a firearm for an unlawful purpose and a single count of unlawful possession of an antipersonnel bomb. Under New Jersey law, the possession of a firearm for an unlawful purpose was a "second-degree" offense, punishable by imprisonment for five to ten years. See N.J.Stat.Ann. 2C:39-4(a) and 2C:43-6(a)(2). Under a separate statute, known colloquially as the state's "hate crime" law, a sentencing court could impose for a second-degree offense an "extended term" of imprisonment of ten to twenty years if it found, by a preponderance of the evidence, that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." N.J.Stat.Ann. 2C:44-3(e). After accepting Apprendi's guilty pleas, the trial court applied the hate-crime law and imposed a sentence of confinement of twelve years for one of the firearm-possession offenses.
The trial court and the state appeals courts rejected Apprendi's constitutional challenges to the law. But the United States Supreme Court reversed, after answering in the affirmative the question of "whether the Due Process Clause of the Fourteenth Amendment require[d] that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." Apprendi, supra at 469, 120 S.Ct. at 2351.
The constitutional underpinnings of the decision in Apprendi were theFourteenth Amendment's due-process guarantee and the Sixth Amendment's guarantee of trial by jury, which "together, * * * indisputably entitle a criminal defendant to `a jury determination that [he] is guilty of every element of the crime with which he is charged beyond a reasonable doubt.'" Id. at 477, 120 S.Ct. at 2356. Justice John Paul Stevens, writing for the five-justice majority, found, in his examination of "the historical foundations for [the Court's] recognition of these principles," "nothing * * * [to] suggest that it is impermissible for [sentencing] judges to exercise discretion taking into consideration various factors relating both to offense and offender — in imposing a [sentence] within the range provided by statute." Id. at 477, 481,120 S.Ct. at 2356, 2358 (emphasis in original). He rejected, however, as "constitutionally novel and elusive," the "distinction," asserted by the state as determinative, "between `elements' and `sentencing factors.'" He instead deemed "the relevant inquiry [to be] one not of form, but of effect — does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"Id. at 494, 120 S.Ct. at 2365.
The effect of the New Jersey hate-crime law, Justice Stevens determined, was to "remove the jury from the determination of a fact that, if found, expose[d] the criminal defendant to a penalty exceeding
the maximum he would [have] receive[d] if punished according to the facts reflected in the jury verdict alone." Id. at 482-483, 120 S.Ct. at 2359
(emphasis in original). That procedure, he concluded, represented "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Id. at 497, 120 S.Ct. at 2366. Upon that conclusion, the Court reversed.
Here, the appellant was indicted for possession of crack cocaine in an amount in excess of one hundred grams, in violation of R.C. 2925.11(A). The charge was accompanied by a specification alleging that the appellant was "a Major Drug Offender." The jury returned a verdict finding the appellant guilty of possession of cocaine as charged in the indictment. The trial court thereupon sentenced the appellant to terms of confinement of ten years on count one and ten years on the accompanying specification, and ordered that the terms be served consecutively in relation both to each other and to the prison terms imposed for the other offenses.
R.C. 2925.11(A), which proscribes the offense of possession of drugs, provides in relevant part that "[n]o person shall knowingly * * * possess * * * a controlled substance." If the controlled substance is crack cocaine and the amount equals or exceeds one hundred grams, "possession of cocaine is a felony of the first degree, the offender is a major drugoffender, and the court [must] impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and mayimpose an additional mandatory prison term prescribed for a major drugoffender under [R.C. 2929.14(D)(3)(b)]." R.C. 2925.11(C)(4)(f) (emphasis added). Under R.C. 2929.14(D)(3)(b), a court imposing a prison term pursuant to R.C. 2925.11(C)(4)(f) "may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed [for the offense] * * *, makes both of the[se] findings":
 The term so imposed [is] inadequate to punish the offender and protect the public from future crime, because the applicable factors under [R.C. 2929.12] indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 The term so imposed [is] demeaning to the seriousness of the offense, because one or more of the factors under [R.C. 2929.12] indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
R.C. 2929.14(D)(3)(b) and 2929.14(D)(2)(b)(i) and (ii).
The jury's verdict finding the appellant guilty of possession of crack cocaine in an amount in excess of one hundred grams thus mandated the imposition of the maximum prison term prescribed for a first-degree felony and triggered his classification as a "major drug offender." The appellant's classification as a "major drug offender," in turn, vested the trial court with the discretion to impose an additional prison term within a one-to-ten-year range, upon specific findings concerning the likelihood that the appellant would recidivate and the seriousness of his conduct.[2] See R.C. 2925.11(C)(4)(f) and 2929.14(D)(3)(b). In this way, the jury's verdict finding the appellant guilty of cocaine possession "authorized" the imposition of the additional ten-year term of confinement to which a "major drug offender" is subject. Therefore, the finding requisite to the imposition of the additional ten-year term — that the appellant was a "major drug offender" — did not "expose the [appellant] to a greater punishment than that authorized by the jury's guilty verdict." See Apprendi, supra at 494,120 S.Ct. at 2365.
Accordingly, we hold that the imposition of the additional ten-year term of confinement upon the appellant's classification as a major drug offender violated neither his right to due process nor his right to trial by jury. On that basis, we overrule the fourth assignment of error.
 V.
In his fifth assignment of error, the appellant contends that neither the controlling sentencing provisions nor the evidence supported the imposition of consecutive sentences or the maximum possible prison terms. In his sixth assignment of error, he mounts a more specific challenge, targeting the maximum prison terms imposed upon the verdict finding him guilty of cocaine possession and upon his classification as a major drug offender. We address these challenges together and find them to be well taken in part.
The court in the proceedings below sentenced the appellant to the maximum possible terms of imprisonment of eight years for trafficking in marijuana and five years for possession of marijuana, as those offenses were charged in the indictment numbered B-0003366, and ten years for possession of crack cocaine, five years for possession of marijuana, and one year for having a weapon while under a disability, as those offenses were charged in the indictment numbered B-9907916. The court also imposed an additional ten-year term of confinement for the major-drug-offender specification and ordered that all sentences be served consecutively.
The court prepared and placed of record worksheets memorializing its felony-sentencing findings. The felony- sentencing worksheets filed in both cases reflected the court's findings, relative to the risk of recidivism, that the appellant had had a "[p]rior delinquency or convictions," had had an "[u]nsuccessful probation or parole," showed "[n]o remorse," and faced his "3rd trip to [the] pen[itentiary]." The worksheet filed in the case numbered B-9907916 further reflected the court's findings, in support of its imposition of maximum sentences on the cocaine-possession, marijuana- possession, and weapon-under-disability charges, that the appellant had "committed the worst form of the offense," "[p]ose[d] the great [sic] likelihood of recidivism," and was "a Major Drug Offender."
Before imposing sentence, the court stated for the record the following:
 You know, its a sad thing, Mr. McCoy. There is a drug court right around the corner on this floor of the courthouse.
* * *
 And what people like you do causes an awful lot of people to wind up over there in front of judges in the general division.
 You're a drug salesperson, sir. You're a drug trafficker. You were convicted of that eight years ago. You have other charges, drug-related charges.
 Then, following the imposition of sentence, the court directly addressed the felony-sentencing requirements:
 The record should * * * indicate that as it pertains to the felony sentencing guidelines, I find that as a drug salesperson he has committed the worst form of the act; that he is, in fact, a major drug dealer; that he poses the greatest likelihood of recidivism, along with the standard findings under prior delinquency or convictions, unsuccessful probation or parole.
 R.C. 2929.19 mandates that the imposition of a prison term be predicated upon specific findings. Thus, a sentencing court must "make a finding that gives its reasons" for imposing a prison term for a fourth- or fifth-degree felony, for imposing consecutive prison terms, or for imposing a prison term that is the maximum allowable prison term for an offense for which the maximum term is not mandated. See R.C. 2929.19(B)(2)(a), 2929.19(B)(2)(c), 2929.19(B)(2)(d), and 2929.19(B)(2)(e).
On appeal, an offender may challenge the imposition of a nonmandatory maximum prison term; the imposition, without a finding of one the R.C.2929.13(B) imprisonment factors, of a prison term for a fourth- or fifth-degree felony; the imposition of an additional ten-year term of imprisonment upon the offender's classification as a "major drug offender"; or the imposition of any sentence that is otherwise "contrary to law." See R.C. 2953.08(A)(1), 2953.08(A)(2), 2953.08(A)(6) and 2953.08(A)(4). If the sentencing court has failed to make the findings relative to the R.C. 2929.13(B) imprisonment factors or the findings requisite to the imposition of consecutive terms of imprisonment, the appellate court must "remand the case to the sentencing court and instruct the sentencing court to state, on the record, the required findings." See R.C. 2953.08(G)(1). Otherwise, the appellate court "may increase, reduce, or otherwise modify" an appealable sentence or "may vacate the sentence and remand the matter to the trial court for resentencing," if the court "clearly and convincingly finds either * * * [t]hat "the record does not support the sentencing court's findings" relative to the R.C.2929.13(B) imprisonment factors or in support of its imposition of consecutive sentences, or "[t]hat the sentence is otherwise contrary to law." See R.C. 2953.08(G)(2).
 A.
In the proceedings below, upon the jury verdict finding the appellant guilty of possession of crack cocaine in excess of one hundred grams, R.C. 2925.11(C)(4)(f) mandated the maximum prison sentence prescribed for a first-degree felony. Hence, the imposition upon the appellant of the maximum sentence of confinement for cocaine possession is not subject to challenge on appeal. See R.C. 2953.08(A)(1).
 B.
The appellant may, however, challenge on appeal the imposition of the additional ten-year term of imprisonment upon his classification as a major drug offender. See R.C. 2953.08(A)(6). As we noted supra, upon the jury's verdict finding him guilty of possession of crack cocaine in excess of one hundred grams, the appellant was, by operation of law, a "major drug offender" and was thus subject to "an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court, with respect to the term imposed" for the underlying offense, made both of the following findings:
 The term so imposed [is] inadequate to punish the offender and protect the public from future crime, because the applicable factors under [R.C. 2929.12] indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 The term so imposed [is] demeaning to the seriousness of the offense, because one or more of the factors under [R.C. 2929.12] indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
See R.C. 2925.11(C)(4)(f), 2929.14(D)(3)(b), and 2929.14(D)(2)(b)(i) and (ii).
 With respect to the cocaine-possession offense, the court found on the felony worksheet, relative to the risk of recidivism, that the appellant had had a "[p]rior delinquency or convictions," had had an "[u]nsuccessful probation or parole," showed "[n]o remorse," and faced his "3rd trip to [the] pen[itentiary]." But the court made no findings on the worksheet relative to the seriousness of the offense, and it failed to make either of the findings required under R.C. 2929.14(D)(3)(b) for the imposition of the additional ten-year term. We discern nothing in the court's ruminations from the bench that might be said to satisfy those requirements. Accordingly, we hold that the imposition of the additional ten-year term upon the appellant's classification as a major drug offender was contrary to law.
 C.
On each of the two counts of possession of marijuana and the single count of trafficking in marijuana, the trial court sentenced the appellant to the maximum terms of confinement. R.C. 2929.14 permits a sentencing court to impose the maximum prison term authorized for an offense only upon "offenders who [have] committed the worst forms of the offense, * * * offenders who pose the greatest likelihood of committing future crimes," and offenders who satisfy the statutory definition of a "major drug offender" or a "repeat violent offender." See R.C.2929.14(C). The imposition of the maximum authorized sentence imposes upon the sentencing court an obligation to "make a finding that gives its reason for selecting the sentence." See R.C. 2929.19(B)(2)(e).
The felony-sentencing worksheet filed in the case numbered B-9907916 reflected the trial court's finding, in support of its imposition of the maximum sentence on the marijuana-possession charge, that the appellant had "committed the worst form of the offense" and "[p]ose[d] the great [sic] likelihood of recidivism." On the worksheet filed in the case numbered B-0003366, the court neglected, with respect to the possession and trafficking offenses charged therein, to so find. But the court, from the bench, ruminated upon the appellant's criminal history and expressly found that the appellant had "committed the worst form of the act" and "pose[d] the greatest likelihood of recidivism." Thus, the court may fairly be said to have satisfied the R.C. 2929.14(C) and 2929.19(B)(2)(e) requirements that it "make [the] finding[s] that give its reason[s] for" imposing the maximum sentences. The record also provides an evidentiary basis for those findings. Accordingly, we conclude that the imposition of the maximum sentences for possession of marijuana and trafficking in marijuana was neither contrary to law nor unsupported by the evidence.
 D.
The court also imposed the maximum term of imprisonment for the fifth-degree felony of having a weapon while under a disability. See R.C. 2923.13(C). When sentencing an offender for a fifth-degree felony, a court must determine the applicability of the R.C. 2929.13(B)(1) imprisonment factors, and must consider the factors set forth in R.C.2929.12(B) and (C), which reflect upon the "seriousness" of the offender's conduct, and the factors set forth in R.C. 2929.12(D), which elucidate the offender's likelihood of recidivism. The court then must impose a term of imprisonment if it finds applicable any one of the R.C.2929.13(B) imprisonment factors and if, upon consideration of the R.C.2929.12 seriousness and recidivism factors, it finds that the offender is not amenable to community control and that imprisonment is consistent with the R.C. 2929.11 sentencing purposes and principles. See R.C.2929.13(B)(2)(a). Alternatively, the court must impose a community-control sanction if it finds the imprisonment factors inapplicable and if, upon consideration of the seriousness and recidivism factors, it finds a community-control sanction to be consistent with the sentencing purposes and principles. See R.C. 2929.13(B)(2)(b).
A sentencing court must "make a finding that gives its reasons" for imposing a prison term for a fourth- or fifth-degree felony. See R.C.2929.19(B)(2)(a). Moreover, the court's reasons for imposing the prison term, as reflected in its finding, must be "based upon the overriding purposes and principles of felony sentencing set forth in" R.C. 2929.11
and upon the applicable R.C. 2929.13(B)(1) imprisonment factors. And, again, the court, in imposing the maximum sentence, must satisfy the R.C. 2929.14(C) and 2929.19(B)(2)(e) requirements that it "make [the] finding that gives its reason for" imposing the maximum sentence.
The felony-sentencing worksheet filed in the case numbered B-9907916 reflected findings, in support of the imposition of the maximum sentence on the weapon-under-disability charge, that the appellant had "committed the worst form of the offense" and "[p]ose[d] the great [sic] likelihood of recidivism." The worksheet also reflected a finding, as to the R.C.2929.12(D) recidivism factors, that the appellant then faced his "3rd trip to [the] pen[itentiary]." This finding, consistent with R.C.2929.13(B)(1)(g), that the appellant had previously served a prison term, satisfied the R.C. 2929.19(B)(2)(a) mandate to the extent that the statute required a finding of one of the R.C. 2929.13(B)(1) imprisonment factors. But the court failed to record on the worksheet, relative to the offense of having a weapon while under a disability, findings and the reasons underlying those findings that "a prison term [would be] consistent with the purposes and principles of sentencing set forth in [R.C.] 2929.11," or that the appellant was "not amenable to an available community control sanction." See R.C. 2929.13(B)(2)(a). Nothing in the court's remarks from the bench can be said to supply those findings. In the absence thereof, the imposition of a term of imprisonment for the fifth-degree felony of having a weapon while under a disability was contrary to law.
 E.
Finally, the court below ordered that the sentences imposed be served consecutively. Prison terms imposed for multiple offenses may be made consecutive only upon the following findings:
 "that the consecutive service is necessary to protect the public from future crime or to punish the offender"; and
 "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and that (a) the offender committed the offenses while awaiting trial or sentencing, or while under a residential, nonresidential or financial sanction, see R.C. 2929.16 through 2929.18, or while under post-release control for a prior offense, or (b) "[t]he harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct," or (c) the offender's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 See R.C. 2929.14(E)(4). The sentencing court must also "make a finding that gives its reasons" for ordering that the sentences imposed for multiple offenses be served consecutively. See R.C. 2929.19(B)(2)(c).
Neither the felony-sentencing worksheet filed in the case numbered B-9907916 nor the worksheet filed in the case numbered B-0003366 contained the requisite findings. Nor can the court's ruminations from the bench be said to satisfy the statutory mandate of "finding[s] that give [the court's] reason[s]" for imposing consecutive sentences. In the absence of such findings, the imposition of consecutive sentences was contrary to law.
On the basis of the foregoing, we sustain the fifth and sixth assignments of error to the extent of the challenges presented therein to the imposition of the additional ten-year term upon the major-drug-offender specification, the imposition of a prison term for the offense of having a weapon while under a disability, and the order that the sentences be served consecutively. We, therefore, reverse the judgment of conviction to the extent that it imposes sentences of imprisonment in contravention of R.C. Chapter 2929, vacate those sentences, and remand this cause to the trial court for further proceedings consistent with law and this Decision. In all other respects, we affirm the judgment of the court below.
Painter, P.J., and Winkler, J., concur.
Raymond E. Shannon, retired, from the First Appellate District, sitting by assignment.
[1] By entry dated March 30, 2001, we consolidated these appeals for purposes of briefing, argument, and decision.
[2] R.C. 2941.1410, which governs major-drug-offender specifications, provides that "[t]he court shall determine the issue of whether an offender is a major drug offender," and that such a determination "is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender," "[e]xcept as provided in sections 2953.03 and 2925.11 of the Revised Code." The cocaine-possession charge upon which the appellant was indicted and convicted arose under R.C. 2925.11, and the appellant was classified as a "major drug offender" by operation of law. See R.C.2925.11(C)(4)(f); see, also, R.C. 2925.01(DD) and 2929.01(X) (which define a "major drug offender" to include one who "is convicted of * * * the possession of * * * at least one hundred grams of crack cocaine"). Therefore, the verdict finding the appellant guilty of possession of crack cocaine in an amount in excess of one hundred grams rendered superfluous the accompanying major-drug-offender specification.