[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Appellant Dennis Alsip filed a replevin action against appellee April Alsip, his ex-wife, for the return of his mobile home. (Because the parties share the same surname, we refer to them by their first names.) According to the certificate of title and the parties' decree of dissolution, Dennis was the sole owner of the mobile home. Dennis claimed damages for loss of rental income and wrongful detention of his personal possessions and moved for an order of possession. April counterclaimed, seeking compensatory and punitive damages caused by Dennis's physical assault. The trial court granted Dennis possession of the mobile home and entered judgment for April on her counterclaims, awarding her $4,144 in compensatory damages and $20,000 in punitive damages.
On appeal, Dennis raises three assignment of error, contending that (1) the trial court abused its discretion in denying him a continuance; (2) the trial court erred by denying him recovery for rent and utility bills; and (3) the trial court erred by awarding punitive damages. We find no merit in Dennis's assignments.
After their dissolution, April and Dennis began dating each other, with April spending the majority of her time at Dennis's mobile home. One night, coming home from dinner, they began to fight. According to April, Dennis hit her with his fist, pulled her from his truck, and stomped on her face with his work boots. Her jaw was broken, requiring surgery. Dennis claimed that, after April hit him, he hit the brakes of his truck, throwing April against the window and dashboard. When they arrived home, April stumbled into the passenger side mirror when she ran around the truck. It is undisputed that both parties had been drinking.
While Dennis was incarcerated, April either stayed or moved into the mobile home for five or six months. According to Dennis, she did not have his permission to do so, and he had not given her a key. She had obtained a key from a neighbor. It is undisputed that April did not pay rent for the mobile home or for the lot, that she did not pay the telephone bill, and that she paid the utilities bill only for approximately three months. After Dennis's family removed his possessions from the mobile home, they were forced to return them by a sheriff's deputy because of a restraining order April had obtained against Dennis, which indicated that she resided in the mobile home.
In his first assignment, Dennis challenges the trial court's denial of his motion for a continuance. After the conclusion of April's case-in-chief, the trial court continued the trial for over twenty-one days in order to accommodate Dennis's criminal trial. When the parties reconvened, Dennis requested another continuance, claiming that he needed other witnesses-two of his neighbors and someone whom he could not identify. The trial court refused the continuance, stating that Dennis had been aware of the trial date for some time and that he did not know the names of the witnesses.
Whether to grant a continuance rests with the trial court's discretion.[1] We conclude that the trial court did not abuse its discretion in denying Dennis's motion for a continuance under the circumstances of this case. The trial had been continued for three weeks to accommodate Dennis's criminal trial, but, during that extension, there was no evidence that Dennis had attempted to locate or identify his witnesses. Further, he failed to demonstrate the importance of the witnesses to his case. We overrule his first assignment.
In his second assignment, Dennis argues that the trial court erred by failing to order April to pay rent for the months she stayed in his home and to pay for the telephone bill and the unpaid portion of the utilities bill during that time.
Dennis testified that he determined that the fair market rental and lot fee for his mobile home was $500 a month after conferring with his attorney. But he denied that his attorney determined the figure and claimed that $500 was actually below fair market rental value. He also testified that the mobile home park prohibited rentals to third parties. Dennis's mother testified that the telephone bill for the period of time April was living at the mobile home was $703.58, as reflected in the bill itself. The utilities bill during the pertinent months was $581.58. The trial court admitted the telephone and utilities bills into evidence without objection. According to Dennis's mother, the lot rental for December through April was $230. She testified that she had paid the balance due on the utilities bill for the time period before April moved in. She also testified that she had requested that the telephone company put a protective device on the telephone to limit calls, but it could not do so because of the restraining order.
The trial court determined that there was no credible evidence concerning the fair market value of the rental income of the mobile home. We agree. Dennis failed to demonstrate how he arrived at the $500 figure other than to say he and his former attorney had decided that the figure was what he could have received had he rented the mobile home to someone. The court also denied Dennis damages for the value of the personal possessions in the mobile home because there was no evidence as to their value. The record supports the trial court's conclusion.
The trial court also refused to order April to pay Dennis for the utilities bill and the telephone bill because the bills had not yet been paid. This conclusion was wrong. Dennis presented credible evidence of the amounts incurred for the use of the telephone and the utilities during the time April was living without his permission in his home. April testified that a friend of hers incurred the long-distance charges on the telephone bill. The amount, however, was undisputed. There was credible evidence that April resided in the home during the pertinent times without his permission and that the charges were incurred while she stayed there. There was no evidence that anyone other than Dennis would be ultimately responsible for the unpaid bills. The fact that the bills had not yet been paid was not material.[2]
The court failed to address the lot rental for the time April lived in the mobile home. Dennis's mother testified that she paid approximately $230 for lot rental and water usage
from December through April. She testified that she did not normally pay Dennis's bills, but that she did so because he was in jail. We conclude that Dennis was also entitled to five months' lot rental at $230 per month for a total of $1,165. Accordingly, we sustain Dennis's assignment to the extent it involves the $581.58 in utilities costs, $703.58 in telephone costs, and $1,165 in lot rental, but overrule it with respect to the rent for the mobile home.
In his last assignment, Dennis challenges the trial court's award of punitive damages, arguing that the $20,000 award was excessive. He claims that both he and April were intoxicated and that the trial court failed to take into account Dennis's financial status.
The purpose of punitive damages is to punish and deter certain conduct.[3] To assess punitive damages against Dennis, the trial court must have concluded that Dennis's acts reflected "malice, aggravated or egregious fraud, oppression, or insult."[4] "Actual malice" is "(1) that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."[5] It is only where the record demonstrates that the award is the result of passion and prejudice or legal error that a reviewing court may substitute its judgment for the judgment of the trier of fact.[6]
Although evidence of Dennis's net worth could have been considered by the trial court, its consideration "[was] not required before otherwise proper punitive damages [could] be awarded to a prevailing party."[7]
Similarly, disparity between the compensatory damages and the punitive damages, standing alone cannot justify a reviewing court's interference with the punitive-damage award.[8] But such disparity may indicate that the punitive damages are the result of passion and prejudice if the award fails to bear a reasonable relationship to the damage done to the plaintiff.[9]
While the amount of punitive damages appears to be high, no evidence was offered regarding Dennis's lack of financial ability to pay, although the record implies that Dennis is far from wealthy. And even had such evidence been admitted, the trial court was not required to consider it. Similarly, while the punitive-damage award was approximately five times the compensatory award, we cannot say that the award failed to bear a reasonable relationship to the nature and extent of the wrong done to April. The evidence demonstrates that Dennis hit her and stomped on her face, breaking her jaw, while she lay helpless on the ground. We conclude that the trial court's award of punitive damages was proper. We overrule Dennis's third assignment.
Therefore, the judgment of the trial court is reversed to the extent that it fails to order April to pay Dennis $3,450.16 for the telephone and utilities bills, and for the lot rental, and it is affirmed in all other respects. We remand this case to the trial court to enter judgment consistent with this judgment entry.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Sundermann, JJ.
[1] See State v. Johnson (2000), 140 Ohio App.3d 385, 392,747 N.E.2d 863, 869.
[2] Accord Cincinnati Omnibus Co. v. Kuhnell (1884), 9 Ohio Dec.Rep. 197.
[3] See Muskovitz v. Mt. Sinai Med. Ctr. (1999), 69 Ohio St.3d 638,635 N.E.2d 331.
[4] See R.C. 2315.12(B).
[5] See Preston v. Murty (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.
[6] See Williams v. Aetna Finance Co. (1998), 83 Ohio St.3d 464, 480,700 N.E.2d 859, 871, certiorari denied (1999), 526 U.S. 1051,119 S.Ct. 1357.
[7] See Wagner v. McDaniels (1984), 9 Ohio St.3d 184, 459 N.E.2d 561, paragraph two of the syllabus.
[8] See Wightman v. Consolidated Rail Corp. (1999), 86 Ohio St.3d 431,715 N.E.2d 546, certiorari denied (2000), 529 U.S. 1012,120 S.Ct. 1286.
[9] See Gray v. Allison Div., General Motors Corporation (1977),52 Ohio App.2d 348, 359, 370 N.E.2d 747, 754.