The State of Ohio, Appellee, v.
Bentz, Appellant.

(No. C-800335—Decided July 22, 1981.)

Mr. Simon L. Leis, Jr., prosecuting attorney, Mr. Arthur M. Ney and Mr. Carl Vollman, for appellee.

Messrs. Sirkin, Pinales & Schwartz and Mr. H. Louis Sirkin, for appellant.

Black, J. A jury found defendant, Ralph Bentz, guilty of two offenses: receiving or retaining a certain 1978 Oldsmobile Cutlass Calais that was owned by Columbia Oldsmobile Co. (Columbia), knowing or having reasonable cause to believe it had been obtained through a theft offense, in violation of R.C. 2913.51(A);[1] and operating that automobile while displaying an Ohio license plate registered to another vehicle, in violation of R.C. 4549.08(C).[2] He was found not guilty of theft. He advances four assignments of error, two of which have merit. The applicable procedural posture or factual background will be reviewed during the separate consideration of each assignment of error.

Constitutional Questions

In his first assignment, Bentz asserts that the court erred in failing to dismiss the two counts of which he was convicted, because, he maintains, R.C. 2913.51 is void for vagueness and R.C. 4549.08 violates due process in failing to specify a *mens rea* as an essential element of the offense. Neither contention has merit.

The definition of receiving stolen property as found in the 1974 Ohio Criminal Code added the factor that Bentz claims creates the impermissible vagueness. Earlier definitions of the of-

---

[1] R.C. 2913.51(A) reads in full as follows:

"No person shall receive, retain, or dispose of property of another, knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

[2] R.C. 4549.08 reads, in pertinent part, as follows:

"No person shall operate or drive a motor vehicle upon the highways of this state if it displays a distinctive number or identification mark which:

"* * *

"(C)· Belongs to another motor vehicle * * *."

fense required the state to prove that the accused knew that the goods were stolen, but the 1974 version allows proof that he either knew or had reasonable cause to believe that the property had been obtained by means of a theft offense. Contrary to Bentz's contention, we believe that the current definition gives persons of ordinary intelligence a reasonable opportunity to know what is prohibited and is sufficiently explicit to prevent arbitrary and discriminatory enforcement. *Grayned* v. *City of Rockford* (1972), 408 U.S. 104; *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156; State v. *Emmons* (1978), 57 Ohio App. 2d 173 [11 O.O.3d 173].

If the legislature had omitted "reasonable" and had defined this element as "knowing or having cause to believe" the property was stolen, the courts undoubtedly would have construed it to mean "reasonable cause," following our long-established tradition of fairness in the application of criminal law. Reasonableness is mainly a judicial concept, one that garners its meaning from the experience of men and women of ordinary prudence and care. It is susceptible of both common understanding and definitive application to any set of circumstances. It is used, for instance, to designate what force may be used in self-defense against an assailant, and it forms the underlying premise in the definition of negligence in Ohio criminal law as "a substantial lapse from due care." R.C. 2901.22(D).

There is no impermissible vagueness in the 1974 elements of receiving stolen property. We hold that R.C. 2913.51 is constitutionally valid.

We find no deficiency of constitutional significance in the absence of any requirement of scienter or *mens rea* in R.C. 4549.08 (use of unauthorized plates). There are two ways in which to view the absence of a requirement of *mens rea*. First, the Ohio Supreme Court has held that when a statute defining an offense is silent on the question of intent, the purpose of the General Assembly is to make proof of specific intent unnecessary and to provide that proof of a general intent to do the proscribed act is sufficient. *State* v. *Lisbon Sales Book Co.* (1964), 176 Ohio St. 482 [27 O.O.2d 443], certiorari denied, 379 U.S. 673. Second, R.C. 2901.21(B)[3] sets forth the General Assembly's directive that when the defining statute does not specify the degree of mental culpability, the question becomes whether the statute plainly indicates a purpose to impose strict criminal liability. If that purpose is plainly indicated, then proof of culpability is not necessary for a conviction, but if that purpose is not plainly indicated, then proof of recklessness (R.C. 2901.22[C]) is sufficient for conviction. Thus, the absence of any *mens rea* requirement may be interpreted to require proof of a general intent to do the prohibited act (a matter of strict criminal liability) or proof of recklessness. We see no constitutional difficulty with this.[4] We have not been cited any case where such a statute was

---

[3] R.C. 2901.21(B) reads in full as follows:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

[4] We note that defendant made no objection to the jury instruction on use of unauthorized plates, which defined the offense without any reference whatsoever to mental culpability, and the defendant does not raise any claim of error in that instruction. Thus we do not reach and do not decide whether the applicable statute, R.C. 4549.08(C), should be construed to impose strict criminal liability or to require proof of recklessness.

held to violate those principles of fundamental fairness that are subsumed under the requirements of due process. We hold that R.C. 4549.08(C) is constitutionally valid.

The first assignment of error has no merit.

### Sufficiency of Evidence for Conviction of Receiving Stolen Property

In his second assignment, Bentz asserts that it was error to overrule his motions for acquittal duly made under Crim. R. 29(A) on the ground that the evidence was insufficient to sustain a conviction of receiving stolen property. The basis of this assertion is that the evidence was not sufficient to prove to reasonable minds beyond a reasonable doubt the element of "knowing or having reasonable cause to believe" the automobile had been obtained through a theft offense. We agree. *State* v. *Lee* (1974), 322 N.E.2d 684 [69 O.O.2d 158]; *State* v. *Roseman* (April 19, 1976), Hamilton App. No. C-75271, unreported.

Bentz chose neither to testify nor to present any evidence of any nature. The prosecution evidence may be briefly summarized. The 1978 Cutlass Calais was owned by Columbia and leased on July 1, 1978 to Queen City Insulators, Inc. (Insulators) at a fixed monthly rental for twenty-four months. Al Price signed as "Expediter" for Insulators and he also signed as an individual lessee. The rental was paid through March 1979 in two lump sums, but thereafter the lessees were in arrears. Columbia tried but could not find the car, Insulators or Price, nor could a private investigator whom Columbia contacted in October 1979. The Cincinnati Police Department, to which the car was orally reported as stolen on January 15, 1980, was no more successful. There is some suggestion that during 1978 or 1979 Insulators was acquired by Henry Freckman, a friend of Bentz.

Several of Bentz's neighbors in Norwood saw the automobile parked near his residence and driven by him or by a daughter for a period beginning just before or during the 1979 Christmas holidays. The Norwood police observed Bentz driving the car on January 23, 1980 and stopped him while driving the car the next day to arrest him for an entirely different offense not connected with possession of a stolen vehicle. Neither the 1978 Cutlass Calais nor its VIN (vehicle identification number) was altered in any way, but the license plates on the car had been issued to another car, a 1974 Cadillac owned by Inmar Leasing Systems Inc. (Inmar). The plates were the second set issued to Inmar for its Cadillac; the first plates had been stolen and the plates found on the 1978 Cutlass Calais were replacement plates; Bentz had signed the application for the first plates, and W. Willingham had applied for the replacement set. The police found in the car a delivery reminder for certified mail issued on December 1, 1979 by the post office in Independence, Kentucky, to Jeffrey Allen Bentz of that town; Jeffrey is the defendant's son.

The evidence was sufficient to prove to reasonable minds beyond a reasonable doubt that Bentz "received" or "retained" the vehicle because he obviously was in possession of it, and that it had been "obtained through the commission of a theft offense."[5] The evidence,

---

[5] The trial court and counsel appear to have agreed that the "theft offense," R.C. 2913.01(K), whereby Bentz acquired possession of the automobile was defrauding a livery, R.C. 2913.41. We disagree. Defrauding a livery involves proof that at the moment when the vehicle was leased, the lessee or lessees had a purpose to defraud or knowledge that he or they were facilitating a fraud. We believe the underlying offense, if any, whereby the vehicle was obtained was theft, defined in R.C. 2913.02(A)(2), as follows:

"(A) No person, with purpose to deprive the owner of property or services, shall know-

however, is not sufficient to prove that Bentz knew or had reasonable cause to believe it had been so obtained. The record failed to demonstrate by direct or circumstantial evidence how or when Bentz came into possession of it and what he knew or should have known about the delinquency in rental payments under the lease and the legality of the manner whereby he took and retained possession. Columbia had delivered possession to Insulators in a transaction that was valid on its face, that allowed use of the vehicle in compliance with traffic laws within the continental borders of the United States without any limitations as to who could drive it, and that gave Columbia options other than repossession in case of default in rental payments or in the performance of the other terms and conditions of the lease. The record is utterly devoid of any testimony about Insulators, Al Price, any new owners of Insulators, Inmar, and W. Willingham, and about Bentz's relationship to, or transactions with, any of them. We know that Al Price, acting on behalf of Insulators and for himself, drove the automobile from Columbia's premises on July 7, 1978, but the chain of possession from then until Bentz had it around Christmas 1979 is unknown.

The two facts that the 1978 Cutlass Calais was carrying unauthorized plates and that a postal notice issued to Bentz's son was found inside do not constitute direct evidence from which reasonable minds could infer that Bentz knew or had reasonable cause to believe that the car had been obtained through a theft offense. Bentz may very well be guilty of using unauthorized plates in violation of R.C. 4549.08(C), but that fact standing by itself cannot give rise to an inference that he knew or could reasonably believe that

it was a "hot" vehicle, there being a total absence of evidence about how he acquired possession. The record fails to disclose why the vehicle was unaltered in any way and why Bentz's possession was so open.

The mere possession of a leased vehicle as to which the rental payments are in arrears does not establish knowledge of either any default in the underlying lease or any use beyond the scope of the owner's express or implied consent. We would not hold that the mere possession of embezzled cash, for instance, is enough for a conviction of receiving stolen property. An embezzler acquires possession of the goods with the consent of the owner, and the circumstances can be such that third parties have reasonable cause to believe that the person with possession has authority to dispose of the goods. We will not hold that even though the embezzled property is a motor vehicle, the ownership of which is registered, the simple possession of it, openly and unaltered, is sufficient without more to support a conviction of receiving stolen property.

When we consider the evidence relating to Bentz's acquiring possession of the automobile, the possibilities run from acquisition by a commercial transaction valid on its face to a theft by Bentz himself. Such circumstantial evidence does not meet the test enunciated in *State v. Kulig* (1974), 37 Ohio St. 2d 157 [66 O.O.2d 351], because it is not irreconcilable with a reasonable theory of Bentz's innocence. The connection between the facts proved by direct evidence and the element of knowledge sought to be proved is so attenuated that no reasonable mind could find the requisite element beyond a reasonable doubt.[6]

---

ingly obtain or exert control over either:

"* * *

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;"

[6] Circumstantial evidence is sometimes defined as proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind. 1 Ohio Jury

The second assignment of error has merit. The conviction of receiving stolen property was not sustained by the evidence.

### Jury Instructions on Receiving Stolen Property

The third assignment contends that the jury instructions on receiving stolen property were erroneous because they permitted the jury to draw an inference that could not be legally derived from the evidence. We agree, the underlying point of law being the same as that which was considered in the preceding part of this opinion.

The jury instruction was, in brief, that possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the jury may, but is not required to, infer that the person in possession knew it was stolen. The state argues that this instruction was approved in *Barnes* v. *United States* (1973), 412 U.S. 837,[7] and in *State* v. *Arthur* (1975) 42 Ohio St. 2d 67 [71 O.O.2d 81], in which convictions of receiving stolen property were affirmed by the high courts. In *Barnes*, however, the property consisted of United States Treasury checks made out in specific amounts to

named individuals that were mailed July 1st and deposited July 8th by the defendant with endorsements forged by him using a false name. In *Arthur*, the property consisted of blank checks stolen from a private corporation and found "shortly thereafter" in defendant's wallet, each made out in a specific sum to a named payee by a named drawer, both of whom appear to have been fictitious. The *Barnes* conviction was upheld because the traditional common law inference of guilty knowledge derived from unexplained possession, "deeply rooted in our law," was supported by the "rational connection" between possession of recently stolen Treasury checks payable to persons the accused did not know and the inferred knowledge that he knew they were stolen. "[C]ommon sense and experience tell us that [the accused] must have known or been aware of the high probability that the checks were stolen." *Id.* at 845. The Ohio Supreme Court specifically relied on this reasoning in upholding Arthur's conviction.

The two cases, both involving stolen checks, are clearly distinguishable on the facts from the case *sub judice*. As explained above, we believe that mere possession (standing by itself) of a leased

---

Instructions, Section 5.10(d) (1968). Another helpful expression is found in 1 Wigmore on Evidence (3d Ed.) 399, Section 24, as follows:

" '[w]hen we speak of a fact as established by circumstantial evidence, we mean that the existence of it is fairly and reasonably to be inferred from other facts proved in the case.' " (Quoting from *State* v. *Carter* [1873], 1 Houst. Cr. C. 402, 410.)

The sufficiency of circumstantial evidence to prove a fact or to prove guilt depends, among other things, on whether reason and common sense lead us from the facts proved by real or direct evidence to the fact sought to be proved. If the trier of fact determines that the connection between what is proved and what is sought to be proved is strong enough to support a finding of proof beyond a reasonable doubt, the circumstantial evidence is sufficient.

On the other hand, if that connection is so weak or attenuated that the trier cannot say the fact sought to be established has been proved beyond a reasonable doubt, then the circumstantial evidence is insufficient. Such decisions are reposed in the trier of facts with one exception: when the connection is so weak or attenuated that no reasonable mind could find proof beyond a reasonable doubt, the matter will be taken away from the trier of the fact because the proof is insufficient as a matter of law to overcome the presumption of innocence. We believe that this is the underlying principle of *State* v. *Kulig, supra.*

[7] The jury instructions *sub judice* on this phase of receiving stolen property were substantially the same as that approved in *Barnes* v. *United States, supra,* at fn. 3.

vehicle for which the rental payments are in arrears does not establish knowledge of criminal possession by reason of default or of use beyond the scope of the owner's express or implied consent. There is a distinct difference, as discussed above, between consensual possession with apparent authority to transfer and possession of other items like government or corporate checks that obviously have no legitimate connection with the possessor.

The third assignment of error has merit.

### Dynamite Charge

The last assignment maintains that the court erred when, after the jury reported in writing that it could not agree on the counts alleging the receipt of stolen property and the use of unauthorized plates, the court instructed the jury in such a way as to coerce a guilty verdict on both counts. This claim has no merit.

The objection made by the defendant to the supplemental instruction in which the judge told the jury it would not discharge them but simply recess them for the night, was general and not specific. Defense counsel said, only, "I object," and then moved for a mistrial on the basis that the jury was hung. He failed to comply with Crim. R. 30 by stating specifically the matter to which he objected and the grounds of his objection. The error may not be raised on appeal. *State* v. *Williams* (1977), 51 Ohio St. 2d 112 [5 O.O.3d 98].

Although the defendant does not advance the argument that the supplemental instruction as given was plain er-ror, we have examined it in that light, in the interests of justice. The instruction contained the following sentence: "And may I state, the evidence produced during this trial is sufficient for you to reach a verdict of one kind or another." Taken by itself, this might have been subject to specific objection by the defendant.[8] But the sentence is only one of several, and the balance of the supplemental instructions told the jurors that they should reach a verdict "if it's at all possible," that "this doesn't mean that a juror, any one of you, shall give up or yield a well-grounded opinion or violate your individual oath," and "a verdict that you might return should represent the opinion of each one of you." The jury was not told it had to reach a decision, an instruction held invalid in *Jenkins* v. *United States* (1965), 380 U.S. 445, nor was there any inpermissible inquiry about the state of the jury's vote or how many stood for what verdict. We find nothing to suggest that a minority originally in favor of acquittal of either or both of the two charges eventually agreed with the majority and signed verdicts of guilty of both charges under pressure from the court as well as from the majority. There was no plain error.

We find no merit in the fourth assignment of error.

### Conclusion

Having found that Bentz's conviction of receiving stolen property in violation of R.C. 2913.51 was not supported by sufficient evidence, we reverse those parts of the judgment below that found Bentz guilty of that offense and that imposed a

---

[8] We believe the intent of the judge's remark was to express his opinion that there was sufficient evidence to support a conviction, using the language of Crim. R. 29(A). The harm, however, stems from the other possible interpretations of the language used. The jury could assume that the judge was indicating his preference for a conviction. Any misunder-standing could have been cleared up by an immediate objection by defense counsel and a correcting statement by the judge. Or entirely different instructions for a jury unable to agree could have been used, such as those found in McBride, The Art of Instructing the Jury, Sections 3.61 *et seq.*, or A.B.A. Standards Relating to Trial By Jury, Section 5.4.

sentence on him for that offense and discharge Bentz of that offense, but we affirm the conviction and fine for use of unauthorized plates in violation of R.C. 4549.08(C).

*Judgment affirmed in part and reversed in part.*

KEEFE and DOAN, JJ., concur.