[Cite as *Broadview Hts. v. Waseleski*, 2023-Ohio-4790.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CITY OF BROADVIEW HEIGHTS,  :

    Plaintiff-Appellee,  :

                                 No. 112346

    v.  :

PHILLIP WASELESKI,  :

    Defendant-Appellant.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** December 28, 2023

---

Criminal Appeal from the Parma Municipal Court
Case No. 22CRB00905

---

### *Appearances:*

Vince Ruffa, Law Director, City of Broadview Heights, and
Joseph Grandinetti, Assistant Prosecutor, *for appellee*.

Allen C. Hufford, *for appellant*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Phillip Waseleski ("Waseleski"), appeals from his conviction following a bench trial. He raises the following assignments of error for review:

1. The trial court erred in finding the defendant guilty of criminal mischief because of insufficient evidence.

2.  The court erred when it found the defendant guilty because it was counter to the manifest weight of the evidence.

3.  The court erred in sustaining an objection of relevance preventing the defendant from exploring potential bias of a witness when the court prevented the defendant from questioning about a EEO (Equal Employment Opportunity) complaint that the defendant had against the plaintiff.

4.  The court erred in admitting the videotape because it was not properly authenticated when entered into evidence.

5.  The court erred in convicting the defendant given that the contamination of the credibility of the video is against the manifest weight of the evidence.

6.  The court erred in allowing Patrol Officer Harmon and Sergeant Carlton to testify as to their opinions as to the state of mind of the defendant regarding the dumping of trash.

{¶ 2} After careful review of the record and relevant case law, we affirm.

## I.  Factual and Procedural History

{¶ 3} In March 2022, the city of Broadview Heights filed a complaint against Waseleski, charging him with a single count of criminal mischief in violation of Broadview Heights Codified Ordinances ("BHCO") 642.11.  The offense was later amended to a charge of criminal mischief in violation of R.C. 2909.07, a misdemeanor of the third degree.  (Tr. 7.)  Following several continuances, the matter proceeded to a bench trial in November 2022.

{¶ 4} At trial, Stephanie Johnson ("Johnson") testified that she is the owner of a commercial cleaning franchise and provides cleaning services to various facilities, including the University Hospitals Broadview Heights Health Center ("UH hospital").  Waseleski was employed by Johnson as a "general cleaner."  He was

responsible for cleaning the offices and examination rooms located on the second floor of UH hospital. (Tr. 15.)

{¶ 5} On February 28, 2022, Johnson and Waseleski had a disagreement concerning Waseleski's work practices during his night shift at UH hospital. Specifically, Johnson alleged that Waseleski was leaving UH hospital during his shift without approval and while being "clocked in." (Tr. 15.) Johnson testified that Waseleski became "belligerent" during the verbal dispute, resulting in the termination of his employment. (Tr. 17.) After Waseleski was fired, he continued to insult and yell at Johnson. He further threatened to "take [her] house, [her] truck, [her] Jeep, anything that [she] had, that [she] was messing with the wrong person." (Tr. 21.) Johnson testified that she immediately contacted the police because Waseleski was still at UH hospital and she was concerned for the safety of her other employees.

{¶ 6} Officer Jessica Harmon ("Officer Harmon") of the city of Broadview Heights Police Department, testified that at approximately 10:34 p.m. on February 28, 2022, she received a dispatch to respond to UH hospital to "remove" an employee from the building. (Tr. 55.) Officer Harmon was provided a description of Waseleski and his vehicle. Upon arriving at the scene, Officer Harmon observed Waseleski sitting in the driver's seat of his vehicle in the hospital parking lot. Officer Harmon testified that when she confronted Waseleski, "he immediately got irate asking why I was there, what are you doing." (Tr. 57.) Officer Harmon testified that she explained to Waseleski that she was there to ensure that he was safely removed

from the property. Following an exchange of words, Waseleski left the premises and Officer Harmon "cleared the call." (Tr. 59.) Officer Harmon then resumed her patrol.

{¶ 7} Shortly after contacting the police, Johnson arrived at the scene to speak with the responding officers and to complete Waseleski's work responsibilities for the evening. When Johnson entered the hospital, she discovered "trash thrown — strewn all over the hallways and [examination rooms]" that Waseleski was responsible for cleaning during his shift. (Tr. 25.) Johnson described the scene as follows:

> There were paper towels in the hallways, and in four of the exam rooms there was paper towels, trash out of the trash can, dirty diapers, food. It had gone all the way down the hall and into the exam rooms.
>
> * * *
>
> It was very obvious to see when I walked in, somebody had thrown trash throughout the hallway and the exam rooms, and Mr. Waseleski is the only one that I had to clean those areas.

(Tr. 27-29.) Based on these observations, Johnson contacted the police department a second time to report "the mess" caused to the second-floor offices. (Tr. 30.)

{¶ 8} Officer Harmon confirmed that she was called back to the scene at approximately 11:15 p.m. to investigate the "trashed suites." (Tr. 60.) Upon arriving at the hospital, Officer Harmon observed trash "thrown down the hall, in the middle of the rooms, [and] in the suites." (Tr. 62.) She explained that "there was like, food, trash, like medicine glass vials, and dirty diapers just all over the floor." (Tr. 61.)

{¶ 9} In the course of her investigation, Officer Harmon spoke with the employees present at the scene and obtained a written statement from Johnson. According to Officer Harmon, the employees denied any involvement in the incident and stated that they did not know who was responsible for the dispersed trash because they were not working in that area of the hospital. In her written report, however, Johnson opined that "[Waseleski] was the one that threw the trash due to him being the only one on the floor cleaning that night." (Tr. 63.)

{¶ 10} Based on the information gathered at the scene, Officer Harmon contacted Waseleski via telephone. Officer Harmon testified that Waseleski denied having any knowledge about the trash found in the offices, stating "anyone could have done it." (Tr. 64.) During this conversation, Officer Harmon notified Waseleski that he was going to be charged with criminal mischief.

{¶ 11} On March 1, 2022, the Broadview Heights Police Department retrieved video footage captured by UH hospital's security cameras. The video, city's exhibit A, was played during Officer Harmon's direct examination while she narrated the events as they unfolded. Officer Harmon summarized the contents of the video as follows: "[Waseleski] was seen going into the area that I was in observing the trash on the floor with a full trash bag and then never coming back out with it." (Tr. 65.)

{¶ 12} Sergeant Dale Carlton ("Sergeant Carlton") of the city of Broadview Heights Police Department testified that he responded to UH hospital approximately two minutes after Officer Harmon. Sergeant Carlton stated that by the time he had arrived at the scene, Officer Harmon was already speaking with

Waseleski in the parking lot. Sergeant Carlton verified that Waseleski "was very upset" and hostile towards the responding officers. (Tr. 81.) Sergeant Carlton further testified that he reviewed the video-surveillance footage showing Waseleski taking a large trash bag into an office. When asked to narrate his observation of the video, Sergeant Carlton stated, "In my view, what I believe is happening is [Waseleski] reaching into a bag and taking stuff out and throwing it." (Tr. 87.)

{¶ 13} Waseleski testified on his own behalf. In relevant part, Waseleski denied causing the mess discovered by Johnson on February 28, 2022, and maintained that other employees had access to the second-floor offices during his shift. Waseleski testified that he immediately left the building and headed to his vehicle after his employment was terminated by Johnson. Before he could exit the parking lot, however, Waseleski was "surrounded" by three officers who were acting "like there was something criminal going down." (Tr. 117.) Regarding the video-surveillance footage introduced by the city, Waseleski stated that he was merely transferring leaky trash from a garbage bag to a trash bin that was located behind an office door. (Tr. 134-135.) Waseleski further claimed that city's exhibit A lacked credibility because the city of Broadview Heights Police Department obtained the video footage directly from Johnson and not from UH hospital.

{¶ 14} At the conclusion of trial, Waseleski was found guilty of criminal mischief in violation of R.C. 2909.07.[1] The trial court sentenced Waseleski to 60

---

[1] The trial court's final journal entry, dated January 18, 2023, reiterates that Waseleski was found guilty of the amended charge following a nonjury trial. However, the final entry further states that prior to the imposition of a sentence on December 19, 2022, "the

days in jail, suspended, imposed a 12-month period of probation, and ordered Waseleski to have no contact with Johnson.  Waseleski was also required to pay a fine in the amount of $500, with $350 of the fine suspended.

{¶ 15} Waseleski now appeals from his conviction and sentence.

## II.  Law and Analysis

### A.  Sufficiency of the Evidence

{¶ 16} In the first assignment of error, Waseleski argues the state failed to present sufficient evidence to support his conviction.

{¶ 17} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 273,

---

defendant waived the issuance of a new complaint and entered a plea of guilty," which was accepted by the court following a Crim.R. 11 explanation of rights.  On November 17, 2023, this court ordered the parties to address the trial court's reference to a purported guilty plea and whether Waseleski waived the arguments raised in this appeal by entering a plea of guilty.  On November 29, 2023, the parties filed a joint response brief, ensuring this court that the finding of guilt arose following a bench trial and that no plea was entered into under Crim.R. 11 in this matter.  Satisfied with the parties' clarification of the proceedings, we find Waseleski has not waived the evidentiary challenges raised in this appeal.  The trial court shall modify its final entry of conviction nunc pro tunc to delete the reference to the purported admission of guilty under Crim.R. 11.

574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 18} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, 86 N.E.3d 1032, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. In contrast, "[c]ircumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence." *Id.*; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."). *Id.* at ¶ 37, citing *State v. Griesheimer,* 10th Dist. Franklin No. 05AP-1039, 2007-Ohio-837, citing *State v. Bentz*, 2 Ohio App.3d 352, 442 N.E.2d 90 (1st Dist.1981).

{¶ 19} Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence. *Cassano* at ¶ 13. Furthermore, circumstantial evidence is not only sufficient, "'but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*,

8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 20} In this case, Waseleski was convicted of criminal mischief in violation of R.C. 2909.07. "The activity that constitutes criminal mischief under Revised Code Section 2909.07(A) involves a crime against property rather than a person." *Wysocki v. Oberlin Police Dept.*, 9th Dist. Lorain No. 13CA010437, 2014-Ohio-2869, ¶ 11. "A person commits criminal mischief if he without privilege to do so, knowingly move[s], defaces, damages, destroys, or otherwise improperly tampers with the property of another." *State v. Fridley*, 9th Dist. Wayne No. 17AP0029, 2019-Ohio-3412, ¶ 8, citing R.C. 2909.07(A)(1)(a). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." *Id.*, citing R.C. 2901.22(B).

{¶ 21} On appeal, Waseleski argues that there is no evidence that he was responsible for the trash discovered on the hospital-room floor. Alternatively, he contends that even if he did dump trash in the hospital, the prosecution failed to establish that he knowingly damaged, destroyed, defaced, or tampered with the property as those terms are commonly defined.

{¶ 22} Viewing the evidence adduced at trial in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the criminal mischief offense proven beyond a reasonable doubt. In this case, the city presented ample evidence regarding Waseleski's verbal altercation with

Johnson on the night in question, his state of mind following his termination of employment, and his proximity to the trashed office area during the relevant timeframe. Specifically, Johnson confirmed that Waseleski was the only employee assigned to the area where the trash was discovered, and the video-surveillance footage shows Waseleski walking into the office with "a full trash bag and then never coming back out with it." (Tr. 65.) Taken together, we find the evidence permitted the trier of fact to reasonably infer that Waseleski was responsible for the trash dispersed in the hallway and examination room.

{¶ 23} Furthermore, we find the evidence demonstrates that Waseleski "tampered" with the property as contemplated under the criminal statute. In this regard, R.C. 2909.07(B) provides that "as used in this section" the phrase "'improperly tamper' means to change the physical location *or the physical condition of the property*." (Emphasis added.) Here, Waseleski's act of dispersing trash throughout the office undoubtedly changed the physical condition of the property. Accordingly, we find Waseleski's conviction for criminal mischief is supported by sufficient evidence.

{¶ 24} The first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 25} In the second assignment of error, Waseleski argues his conviction is against the manifest weight of the evidence. Waseleski contends that in the absence of direct evidence or eyewitness testimony, the city's case rested on "coincidental

inferences" that did not overcome the greater weight of the evidence showing that other employees had access to offices where the trash was discovered.

{¶ 26} When considering a defendant's claim that a conviction is against the manifest weight of the evidence, the appellate court functions as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court examines the entire record, weighs the evidence and all reasonable inferences that may be drawn therefrom, considers the witnesses' credibility and determines whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 27} In addition, a trier of fact is free to believe all, some, or none of the testimony of each witness testifying at trial. *State v. Jones,* 8th Dist. Cuyahoga No. 108371, 2020-Ohio-3367, ¶ 85; *State v. Sheline,* 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 100. Thus, "[a] conviction is not against the manifest weight of the evidence simply because the jury believed the testimony of the state's witnesses and disbelieved the defendant." *Jones* at ¶ 85.

{¶ 28} Viewing the evidence adduced at trial and the inferences that can be reasonably drawn therefrom, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. In this case, the city presented credible evidence demonstrating Waseleski's motive, access, and opportunity to commit the offense of criminal mischief on February 28, 2022. Waseleski exercised his right to testify on his own behalf and denied all allegations levied against him. Similarly, the perceived limitations of the city's evidence, including the lack of physical evidence or eyewitness testimony, was widely explored by the defense on cross-examination and during its case-in-chief. Thus, the trier of fact was provided all relevant information and was in the best position to assess the credibility of the competing evidence. Under these circumstances, we find Waseleski's conviction is not against the manifest weight of the evidence.

{¶ 29} The second assignment of error is overruled.

### C. Limitation of Cross-Examination

{¶ 30} In the third assignment of error, Waseleski argues the trial court erred by prohibiting defense counsel from questioning Johnson on cross-examination about his filing of an Equal Employment Opportunity Commission complaint ("the EEOC complaint") against her. Waseleski contends that the trial court's evidentiary ruling denied him the opportunity to explore Johnson's potential bias.

{¶ 31} The constitutional right of cross-examination includes the right to impeach a witness's credibility. *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d

1253 (1993); *State v. Brewer*, 2d Dist. Montgomery No. 13866, 1994 Ohio App. LEXIS 3724, 15 (Aug. 24, 1994). Evid.R. 611(B) permits cross-examination on "all relevant matters and matters affecting credibility." In turn, Evid.R. 616(A) governs methods of impeachment and provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616(A). The denial of full and effective cross-examination of any witness who identifies a defendant as the perpetrator of the offense is the denial of the fundamental constitutional right of confrontation essential to a fair trial. *State v. Hannah*, 54 Ohio St.2d 84, 88, 374 N.E.2d 1359 (1978).

{¶ 32} However,

> "trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. *In re Fugate*, 2d Dist. Darke No. 1512, 2000 Ohio App. LEXIS 4306 ([Sept. 22,] 2000). We will not interfere with the trial court's decision in those matters absent an abuse of discretion. *Id.*"

*State v. Bolton*, 8th Dist. Cuyahoga No. 96385, 2012-Ohio-169, ¶ 41, quoting *State v. Foust*, 2d Dist. Montgomery No. 20470, 2005-Ohio-440.

{¶ 33} "Evidence which is not relevant is not admissible." Evid.R. 402. "Relevant evidence" means evidence having any tendency to make the existence of

any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401.

> "The mere fact that testimony is logically relevant does not in all cases make it admissible. It must also be legally relevant. A fact which in connection with other facts renders probable the existence of a fact in issue may still be rejected, if in the opinion of the judge and under the circumstances of the case it is considered essentially misleading or too remote."

*State v. McDowell*, 3d Dist. Hancock No. 5-17-01, 2017-Ohio-9249, ¶ 28, quoting *Whiteman v. State*, 119 Ohio St. 285, 289, 164 N.E. 51 (1928).

{¶ 34} In this case, Waseleski's constitutional challenge concerns the following exchange during the cross-examination of Johnson:

DEFENSE COUNSEL: Okay. Has Mr. Waseleski filed an Equal Employees Commission complaint?

JOHNSON: Yes.

DEFENSE COUNSEL: Okay. And that's still in litigation?

JOHNSON: I was told it was —

PROSECUTOR: I'm sorry, what was the question that you asked before?

WASELESKI: So, it was the Ohio Equal Employee Commission complaint.

PROSECUTOR: I'm going to object to the relevancy.

* * *

TRIAL COURT: First off, whether it's EEOC or whatever, what is the relevance of this item relative to the charge?

DEFENSE COUNSEL: It goes towards the issue —

TRIAL COURT: It goes to the issue of what?

DEFENSE COUNSEL: It goes towards the issue of bias.

* * *

TRIAL COURT: When was this complaint or report or whatever filed?

DEFENSE COUNSEL: I can ask.

TRIAL COURT: Once you ask that, then I'll give you relevance on everything else.

DEFENSE COUNSEL: Okay. Fair enough.

DEFENSE COUNSEL: Do you know when you received the complaint?

JOHNSON: Ask Mr. Waseleski, he filed it. I have no idea when I got it.

TRIAL COURT: Hold on. Was that before or after this incident?

JOHNSON: After.

TRIAL COURT: Court finds it's not relevant. We'll [note] an exception for the defendant. What happens after the fact is after the fact. Continue.

DEFENSE COUNSEL: I have nothing further at this point.

(Tr. 45-47.)

{¶ 35} Viewing the record in its entirety, we are unable to conclude that the trial court abused its discretion by imposing reasonable limits on the scope of defense counsel's cross-examination. In this case, defense counsel was provided an opportunity to explore a potential bias by questioning Johnson about the filing of the EEOC complaint. Johnson answered the questions as they were posed and testified that the EEOC complaint was filed *after* the criminal mischief offense was committed. Given the timeline of events, we agree with the trial court's conclusion that Waseleski's initiation of legal proceedings against Johnson following his

termination of employment did not make it any more or less probable that he committed the offense of criminal mischief. The subsequent litigation bore no relationship to Johnson's firsthand observations on February 28, 2022. Similarly, Waseleski has failed to demonstrate that his filing of an EEOC complaint impaired Johnson's credibility, particularly where her observations at UH hospital were consistent with the observations of Officer Harmon.

{¶ 36} Because the disputed evidence was not relevant to the criminal action, Waseleski has not demonstrated that he was prohibited from engaging in otherwise appropriate cross-examination.

{¶ 37} The third assignment of error is overruled.

### D. Authentication of Video Evidence

{¶ 38} In the fourth assignment of error, Waseleski argues the trial court committed reversible error by admitting city's exhibit A into evidence because the video footage was not properly authenticated. Waseleski contends that the city "provided no evidence in how the police department obtained the evidence from the third-party source or who the third-party source was." Waseleski further asserts that there is no evidence in the record to establish that the video footage captured events that occurred on February 28, 2022.

{¶ 39} The decision whether to admit or exclude evidence is subject to review under an abuse-of-discretion standard and reviewing courts will not disturb evidentiary rulings absent a clear showing that the trial court abused its discretion and materially prejudiced a party. *State v. Barnes*, 8th Dist. Cuyahoga No. 104045,

2017-Ohio-383, ¶ 17, citing *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 34.

{¶ 40} Evid.R. 901(A) addresses the authentication or identification of evidence prior to its admissibility. The evidentiary rule provides, in relevant part:

> (A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support that the matter in question is what its proponent claims.
>
> (B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

{¶ 41} "'[T]he authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be.'" *State v. Heard*, 8th Dist. Cuyahoga No. 110722, 2022-Ohio-2266, ¶ 31, quoting *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81. The proponent of the evidence must demonstrate a "'reasonable likelihood' that the evidence is authentic, which may be supplied by the testimony of a witness with knowledge." *State v. Roseberry*, 197 Ohio App.3d 256, 268, 2011-

Ohio-5921, 967 N.E.2d 233, ¶ 65 (8th Dist.), quoting *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 30; *State v. Wright*, 12th Dist. Clermont No. 28831, 2021-Ohio-2133, ¶ 77.

{¶ 42} Generally, video evidence may be admissible under one of two theories: the "pictorial testimony" theory or the "silent witness" theory. *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aerospace & Agricultural Implement Workers, Local 486*, 61 Ohio St.3d 121, 129, 573 N.E.2d 98 (1991).

{¶ 43} Under the pictorial-testimony theory, evidence is admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness's personal observation. *Id.* at 129-130. "'In authenticating evidence through this method, there is no need to call the witness who took the photographs [or video] as long as a witness with knowledge can testify that the photograph is a fair and accurate depiction.'" *State v. Scott*, 12th Dist. Warren No. CA2012-06-052, 2013-Ohio-2866, ¶ 36, quoting *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 66. The evidence is merely illustrative of a witness's testimony. *Midland* at 129-130.

{¶ 44} Under the silent-witness theory, "the photographic evidence is a 'silent witness' which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness." *Id.* at 130. Therefore, photographic evidence may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence. *Id.* Expert witness testimony is not required to demonstrate reliability. *Id.* In *Midland*, the Ohio Supreme Court found that a

surveillance video tape was properly authenticated when a witness's testimony regarding the layout of the area corresponded with the video and the witness was the custodian of the video and testified that the video had not been altered. *Id.*

{¶ 45} Viewing the testimony presented at trial together with the contents of city's exhibit A, we do not believe the trial court abused its discretion by admitting the video footage obtained from UH hospital's surveillance system. In this case, the city introduced testimony establishing that the city of Broadview Heights Police Department went to UH hospital the morning after the incident and requested to review surveillance video footage during the time period Waseleski had access to the tampered with area of the hospital. Officer Harmon explained that she was unable to obtain the surveillance footage from UH hospital on the night of the incident because the hospital was closed for the evening and the available employees did not have access to the security system. Officer Harmon further testified that the video is a clear and accurate representation of the setting where the trash was dispersed and that she had no reason to believe that the footage was tampered with. (Tr. 67.) Although the video footage does not contain a digital-time stamp, Sergeant Carlton emphasized that the police department's request for surveillance footage was limited to "a specific date and timeframe." (Tr. 97.)

{¶ 46} Under these circumstances, we believe that the trial court could have reasonably determined that the prosecution satisfied the low threshold of establishing that the video footage was what the city claimed it to be, i.e., a fair and accurate depiction of the surveillance footage recovered by the police during the

course of the investigation. *See State v. Ladson*, 8th Dist. Cuyahoga No. 111211, 2022-Ohio-3670, ¶ 22 (determining that the responding officer's testimony that the footage itself accurately reflected the scene of the shooting was sufficient to properly authenticate the video evidence), citing *Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, at ¶ 68 (determining trial court did not abuse its discretion by admitting surveillance video when investigating officer testified that video was an accurate representation of what he originally viewed). *See also State v. Coots*, 2015-Ohio-126, 27 N.E.3d 47 (2d Dist.) (determining that video surveillance footage properly authenticated when investigating officer testified that the video depicting the crime was the same video taken from surveillance cameras in the area); *State v. Hoffmeyer*, 9th Dist. Summit No. 27065, 2014-Ohio-3578 (concluding that trial court did not abuse its discretion by admitting video surveillance footage when investigating officers testified that the video accurately portrayed the location on the night in question).

{¶ 47} In reaching this conclusion, we reiterate that the video footage did not constitute direct evidence of the crime because it did not clearly and unambiguously depict trash being thrown on the ground. Thus, the prosecution witnesses could not testify that the video footage was a fair and accurate representation of the incident. Rather, the video was merely illustrative of the police investigation and was only used to establish Waseleski's possession of trash materials, his opportunity to commit the offense, and his presence in the area of the hospital building where the dispersed trash was later discovered. Any challenge relating to the credibility or

substantive value of the video footage goes to the weight of the exhibit and not its authenticity. *State v. Lash*, 8th Dist. Cuyahoga No. 104725, 2018-Ohio-1385, ¶ 21. Similarly, the absence of testimony from a hospital employee with personal knowledge of the surveillance system's recording process does not render the video footage inadmissible. While such testimony may have been beneficial, courts have not imposed it as an absolute precondition to admissibility under Evid.R. 901(A). *See State v. Farrah*, 10th Dist. Franklin No. 01AP-968, 2002-Ohio-1918, ¶ 39; *State v. Johnson,* 140 Ohio App.3d 385, 393-394, 747 N.E.2d 863, (1st Dist.2000).

{¶ 48} Based on the foregoing, we disagree with Waseleski that the trial court abused its discretion by admitting the video recording into evidence. The fourth assignment of error is overruled.

### E. Contamination of the Video Evidence

{¶ 49} In the fifth assignment of error, Waseleski argues city's exhibit A was devoid of credibility due to the limitations of the video footage. He further contends that "questions as to chain of custody" suggest that the video footage was potentially contaminated.

{¶ 50} "The chain of custody of a piece of evidence is part of the authentication and identification requirement of Evid.R. 901." *State v. Rhodes*, 11th Dist. Lake No. 2000-L-089, 2001 Ohio App. LEXIS 5650, *16 (Dec. 14, 2001). "A strict chain of custody is not always required in order for physical evidence to be admissible." *State v. Wilkins*, 64 Ohio St.2d 382, 389, 415 N.E.2d 303 (1980). Rather, "[t]he state need only establish that it is reasonably certain that substitution,

alteration or tampering did not occur." *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987). *But see State v. Biswa*, 2d Dist. Montgomery No. 29383, 2022-Ohio-3156, ¶ 39 (finding that surveillance-video footage did not require evidence of chain of custody because it was not fungible and indistinguishable by nature).

{¶ 51} Having reviewed the surveillance-video footage introduced at trial, we find no merit to Waseleski's assertion that the footage was "potentially" contaminated or otherwise altered. In this case, Officer Harmon described the process used to retrieve the surveillance footage from UH hospital and expressly testified that she had no reason to believe that the video footage was "not real, fake, or altered." (Tr. 77.) We further note that "[t]he possibility of contamination goes to the weight of the evidence, not its admissibility." *State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992), *overruled on other grounds*, *State v. McGuire*, 80 Ohio St.3d 390, 686 N.E.2d 1112 (1997). As previously discussed, the city satisfied its low burden for authentication under Evid.R. 901, and the trier of fact was presented with all relevant arguments regarding the exhibit's potential weaknesses, including its failure to include a time stamp and the various obstructions of view. Deferring to the trial court's assessment of credibility on this issue, we find no error.

{¶ 52} The fifth assignment of error is overruled.

### F. Lay-Person Opinion Testimony

{¶ 53} In this sixth assignment of error, Waseleski argues the trial court erred by permitting Johnson, Officer Harmon, and Sergeant Carlton to offer opinion testimony as to Waseleski's state of mind.

{¶ 54} Evid.R. 701 governs the admissibility of lay witness opinion testimony. It states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

{¶ 55} As stated, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). Thus, trial courts are afforded "'considerable discretion in controlling the opinion testimony of lay witnesses'" under Evid.R. 701. *State v. Harris*, 8th Dist. Cuyahoga No. 108624, 2020-Ohio-4461, ¶ 54, quoting *State v. Grajales*, 5th Dist. Delaware No. 17CAC030020, 2018-Ohio-1124, ¶ 60.

{¶ 56} On appeal, Waseleski challenges the following testimony, which was introduced over defense counsel's objection: (1) Johnson's testimony that it appeared that the trash was purposely thrown throughout the hallway and examination rooms, and (2) Officer Harmon's testimony that, based on her training

and experience as a police officer, it appeared the mess was created purposely or intentionally. (Tr. 29, 61-62.) Although this assigned error references Sergeant Carlton's testimony, Waseleski has failed to identify Sergeant Carlton's purported lay opinion or include a specific citation to the record where the alleged error occurred. Accordingly, we limit our review to the testimony provided by Johnson and Officer Harmon.

{¶ 57} Upon review, we find no abuse of discretion. This is not the case where the prosecution witnesses offered opinions based on specialized knowledge that is ordinarily governed by Evid.R. 702. Rather, Johnson and Officer Harmon each offered opinions that were within the realm of common understanding and based on their firsthand observations of the scene. The witnesses' belief that the trash was purposely, as opposed to accidently, emptied onto the hospital floor was both "rationally based" on their own perceptions and "helpful to * * * the determination of a fact in issue." Accordingly, we find the trial court reasonably admitted their testimony as lay opinion under Evid.R. 701.

{¶ 58} The sixth assignment of error is overruled.

{¶ 59} Judgment affirmed. The matter is remanded for the trial court to correct its final sentencing entry nunc pro tunc.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MICHAEL JOHN RYAN, J., CONCUR